# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS,<br><br>                                      *Plaintiff*,<br>v.<br><br>FOUNDERS FIRST COMMUNITY DEVELOPMENT CORPORATION,<br>                                      *Defendant.* | Case No. 4:24-cv-00327 |

## VERIFIED COMPLAINT

The American Alliance for Equal Rights brings this action against Founders First Community Development Corporation under 42 U.S.C. §1981. The Alliance seeks declaratory relief, injunctive relief, and nominal damages.

1. "[R]acial discrimination is invidious in all contexts." *SFFA v. Harvard*, 600 U.S. 181, 214 (2023) (cleaned up). The Reconstruction Congress understood this fact when it passed the Civil Rights Act of 1866, which "prohibit[s] any racial discrimination in the making and enforcement of contracts against whites as well as nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 288 (1976). Better known as §1981, this statute guarantees all Americans the "same right" to contract, 42 U.S.C. §1981(a), protecting the "equal right of all persons" to "make and enforce contracts without respect to race," *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up).

2. Founders First CDC is flouting §1981 by inking contracts with some races but not others. Under its Texas Job Creators Grant, Founders awards tens of thousands of dollars to contestants each year. In exchange for a shot at the prize, contestants must complete

1

a months-long class; license away their personal data; and give Founders their intellectual property, financial records, and more.

3.  Eligibility for the contest depends on race. To participate, a contestant must "identify as one of the following: Latinx, Black, Asian, Women, LGBTQIA+, Military Veteran, or [someone] located in a Low to Moderate Income area." *Texas Job Creators Grant* (archived Apr. 7, 2024), perma.cc/38BB-B53Z. So Asians, blacks, and Latinos can always apply, but many whites can never apply.

4.  This kind of rank discrimination was never lawful, even before *Harvard* held that colleges cannot use race in admissions. But in case Founders needed a reminder, *Harvard* reaffirms that "[e]liminating racial discrimination means eliminating all of it." 600 U.S. at 206. No racial discrimination is benign: It always "demeans the dignity and worth" of every American "to be judged" by his race instead of by his "own merit and essential qualities." *Id.* at 220.

5.  That principle is true under the Constitution, true under Title VI, and true under 42 U.S.C. §1981—the federal statute that bars private companies like Founders from discriminating based on race when making contracts. Because Founders's contest is a contract that discriminates on its face, it violates §1981.

6.  The Alliance has members who are being excluded from the contest because they are the wrong race. It is entitled to relief.

## PARTIES

7.  The American Alliance for Equal Rights is a nationwide membership organization that is dedicated to ending racial classifications and racial preferences in America.

2

8. The Alliance was founded in 2021. It was approved by the IRS as a 501(c)(3) tax-exempt organization the same year.

9. Edward Blum is the Alliance's president; Richard Fisher is its treasurer; and Wai Wah Chin is its secretary.

10. The Alliance has 200 members, and its membership continues to grow.

11. The Alliance's members are actively involved in the organization and its affairs. Members voluntarily join the Alliance. They pay dues. They receive regular updates. And they offer input on the Alliance's litigation and other activities.

12. The Alliance has members who are ready and able to apply to Founders's current contest, which closes in "September 2024." *Texas Job Creators Grant*.

13. Founders First "is the largest national platform for growing small businesses led by diverse founders." *Founders First Intro* (May 19, 2021), perma.cc/LB96-UPDJ.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction under 28 U.S.C. §1331 because this case "arise[s] under" a federal statute. *Id.*

15. Venue is also proper in the Northern District of Texas. "[A] substantial part of the events" occurred in the district, 28 U.S.C. §1391(b)(2), and Founders's ties to the district—and the State—are "sufficient to subject it to personal jurisdiction," §1391(d), (b)(1).

16. Founders has an office in the Dallas-Fort Worth Metroplex, *Contact Us* (archived Apr. 7, 2024), perma.cc/7THS-NWVJ, and a majority of Founders's employees live or work in Texas, *Founders First CDC* (archived Apr. 7, 2024), tinyurl.com/2tztxu7b. At least 60% of Founder's U.S. staff live in "Texas," and at least 40% live in the "Dallas-Fort Worth

Metroplex." *Id.* No other city—including the company's headquarters in San Diego—has more Founders staff. *Id.*

17. Everything about the challenged contest occurs in Texas. Founders's contest—the Texas Job Creators Grant Program—gives money to Texas residents, is judged by Texas entrepreneurs, and is available only to Texas businesses. *Texas Job Creators Grant*; *accord Texas Job Creators Quest Grant Judge Resource* (archived Apr. 7, 2024), perma.cc/Y94M-HQMJ. Hence the name "*Texas* Job Creators Grant."

18. The program awards $50,000 to "businesses in Texas," and invests only in "Texas businesses." *Texas Job Creators Grant*.

19. To apply, a business "[m]ust be located in Texas." *Id.* And Founders will not select finalists unless they live in "the state." *National Nonprofit, Founders First CDC, Awards $100,000 to Texas Businesses* (Oct. 4, 2021), perma.cc/6VJJ-KCWL.

20. Founders specifically targets Dallas-Fort Worth businesses. Since the contest was created, business owners in the metroplex have won nearly half the prizes, even though the Dallas-Fort Worth area accounts for only a quarter of Texas's population. In 2021, more than half the winners—16 out of 30—were from "Dallas-Fort Worth." *Id.* In 2022, nearly half the winners—14 out of 30—were from "Dallas-Fort Worth." Dallas Innovates, *14 North Texas Businesses Land Founders First CDC Grant Funding* (Sep. 8, 2022), perma.cc/CK83-8QZ5; *accord Texas Businesses Create New Job Opportunities* (Sep. 8, 2022), perma.cc/F2MM-U5A7. And in 2023, at least eight of the winners were from Dallas-Fort Worth. *Our 2023 Grant Finalists* (archived Apr. 7, 2024), perma.cc/WD35-GNPL.

4

21. The program's administrators work in Dallas-Fort Worth too. The Executive Director of Founders First—the one who oversees the "development and expansion" of Founders's grant programs—lives and works in Dallas-Fort Worth. *Shaylon (Shaylon Benjamin) Scott* (archived Apr. 7, 2024), tinyurl.com/y4vwsb3y ("Frisco, Texas" and "Dallas, Texas"). Last year, more than 75% of the program's judges—the ones who review and select the contest winners—worked in Dallas-Fort Worth. *Texas Job Creators Quest Grant Judge Resource* (archived Apr. 7, 2024), perma.cc/AE7E-TUS3.[1] And more than 80% of the program's participants—from the speakers, to the staff, to the coordinators—live or work in Dallas-Fort Worth. *Meet Our 2023 Texas Job Creators Grant Press Event Speakers* (archived Apr. 7, 2024), perma.cc/QH5Q-6G7C.[2]

---

[1] *E.g.*, LinkedIn, *Will King* (archived Apr. 7, 2024), perma.cc/LB6R-82JW (works in "Cedar Hill, Texas" and the "Dallas/Fort Worth Area"); LinkedIn, *Darlisa Diltz* (archived Apr. 7, 2024), tinyurl.com/2bcycf5z (works in the "Dallas-Fort Worth Metroplex"); LinkedIn, *Holly Burrow* (archived Apr. 7, 2024), perma.cc/Y3UX-4Y3X (works in "Dallas, Texas"); LinkedIn, *Nina Braden* (archived Apr. 7, 2024), perma.cc/X7P7-S2M6 (works in the "Dallas-Fort Worth Metroplex"); LinkedIn, *VR Small* (archived Apr. 7, 2024), perma.cc/89Q3-6M2Q (works in "Dallas, Texas"); LinkedIn, *Joni Foster* (archived Apr. 7, 2024), tinyurl.com/2ub7fsca (works in "Lockhart, Texas"); LinkedIn, *Margo Posey* (archived Apr. 7, 2024), tinyurl.com/34fbv99v (works in "Dallas, Texas"); LinkedIn, *Donna Henry* (archived Apr. 7, 2024), tinyurl.com/3sus3sdw (works in the "Dallas-Fort Worth Metroplex"); LinkedIn, *Tarsha Hearns* (archived Apr. 7, 2024), perma.cc/ZEH9-YHLC (works in "Plano, Texas"); LinkedIn, *Emily Duecker* (archived Apr. 7, 2024), tinyurl.com/4s22hsce (worked in the "Dallas-Fort Worth Metroplex" when judging the contest); *accord* LinkedIn, *Brian K. Marshall* (archived Apr. 7, 2024), tinyurl.com/y8nmpp2p (works in "Austin, Texas"); LinkedIn, *Maria Brown-Spence* (archived Apr. 7, 2024), perma.cc/WQ86-72SR (works in "Austin, Texas"); LinkedIn, *Ren Mitchell* (archived Apr. 7, 2024), tinyurl.com/y2hbkhje (works in "Houston, Texas").

[2] *E.g.*, LinkedIn, *Erica Davis* (archived Apr. 7, 2024), tinyurl.com/cuk8tj64 (works in "Fort Worth, Texas"); LinkedIn, *Brian K. Marshall* (archived Apr. 7, 2024), tinyurl.com/y8nmpp2p (works in "Austin, Texas"); LinkedIn, *Darlisa Diltz* (archived Apr. 7, 2024), tinyurl.com/2bcycf5z (works in the "Dallas-Fort Worth Metroplex"); LinkedIn, *Benjamin J. Vann* (archived Apr. 7, 2024), perma.cc/D7NC-LRRA (works in the "Dallas-Fort Worth Metroplex"); LinkedIn, *Margo Posey* (archived Apr. 7, 2024), tinyurl.com/34fbv99v (works in "Dallas, Texas"); LinkedIn, *Terri Thomas* (archived Apr. 7, 2024), tinyurl.com/mcfwu2hr (works in "Dallas, Texas"); LinkedIn, *Carol Thomas* (archived Apr. 7, 2024), tinyurl.com/mw2ecr2a (works in "Austin, Texas").

22. Member A is a member of the Alliance. Member A lives, works, and does business in the Dallas-Fort Worth area. Member A is a resident of Fort Worth. His business is in Fort Worth. It is run entirely from Fort Worth. And it does businesses with other Fort Worth businesses. Member A would finish the "grant application" in Fort Worth. *Texas Job Creators Grant*. He would complete the remote parts of Founders's "accelerator program[s]" in Fort Worth. *Id.* He would attend Founders's "Virtual Press Event"—where the organization "announce[s] the finalists for the Texas Job Creators Grant"—in Fort Worth. *Id.* And if he won the contest, Member A would use his winnings to improve his Fort Worth business.

23. The Alliance itself is a Texas corporation that is headquartered in Austin. Nearly half its lawyers on this case reside in Texas—Steven Begakis is in Fort Worth, and Gabe Anderson is in Austin. The Alliance's remaining attorneys on this case reside in Tennessee (Cameron Norris and Adam Mortara) and Virginia (Tom McCarthy).

## FACTS
### I. Founders First works only with "diverse" people.

24. Founders First "is the largest national platform for growing small businesses led by diverse founders." *Founders First Intro*. Billed as a "top-tier" accelerator, Founders offers "the largest revenue-based direct fund[ing]" for "diverse-led small businesses" in the nation, providing "$100 million in committed capital" to businesses across the United States. *Id.*

25. Founders helps businesses in three main ways: targeted "funding," investment "support," and day-to-day "coaching." *Id.*; *accord Front Page* (archived Apr. 7, 2024), perma.cc/UY2D-7HVP. Through its three-step process, Founders has helped "hundreds of

6

small service-based business[es]" expand "their revenue to the high seven and eight figures." *Founders First Intro.*

26. Unfortunately, Founders won't help all businesses. Founders serves only "businesses led by diverse founders." *Founders First Intro.* Of course every human being is unique and "diverse"; but Founders defines "diverse" to require membership in a particular group. To receive Founders's support, a company must be owned by "women, people of color, military veterans, members of the LGBTQ community, [or] those located in urban communities." *Id.*

27. Founders runs contests with the same demographic requirements. Every year, Founders offers "national and regional grants … for diverse-led small business owners across the U.S." *Front Page.* Some of those contests are offered only to "LGBTQIA+ business owner[s]." *E.g.*, *National Pride Grant for LGBTQIA+ Small Businesses* (archived Apr. 16, 2024), perma.cc/2FQU-4TRL. Others are offered only to "Latina or Black women-owned business[es]." *E.g.*, *Center For Economic Inclusion Vanguard Accelerator* (archived Apr. 7, 2024), perma.cc/7SWQ-BKKC. And still others are offered to anyone who is "Latinx, Black, [or] Asian." *E.g.*, *Chicagoland Job Creators Grant* (archived Apr. 7, 2024), perma.cc/4YP9-Z9FA.

## II. Founders's Texas Job Creators Grant is closed to certain people based on their race.

28. The Texas Job Creators Grant falls in the last of these three categories: "Latinx, Black, [and] Asian" men can always apply, but white men often can't. *Texas Job Creators Grant.* To participate in the contest, applicants must "identify as one of the following: Latinx, Black, Asian, Women, LGBTQIA+, [a] Military Veteran, or [someone] located in a Low to Mod-

7

erate Income area." *Id.* A separate webpage reiterates that participants "must be Black, Indigenous, Persons of Color," or one of a few other preferred traits. *Frequently Asked Questions* (archived April 7, 2024), perma.cc/ZZJ4-Y9C3. And another tab on Founders's website asks: "Can any company apply for this program?" *Id.* The answer: "No, the company must be diverse-led." *Id.*

29.  Founders's advertising reiterates this eligibility restriction. "To be eligible for the Job Creators Quest Grant," a Founders press release reads, "A business founder must be a person of color, indigenous, LGBTQIA+, military veteran, a woman or [someone] located in a low to moderate income area." *Founders First CDC* (Sept. 8, 2022), perma.cc/5ZNC-YDED. A separate advertisement—again, backed by Founders—reaffirms that rule, noting that only "entrepreneur[s] who identif[y] as a minority, LGBTQIA+, military veteran, a woman or [someone] located in a low-to-moderate income area" can apply. *Texas Job Creators Quest Grant* (archived Apr. 7, 2024), perma.cc/TA6E-EBPA. An accompanying contest application (shown on the right) confirms those requirements, asking applicants if they "identify as a person of color." *Id.* The reason Founders asks that question? Because certain "grants [are] specific to people of color." *Id.* Third parties agree. *E.g.*, Dallas Examiner, *Job Creators Quest Grant* (July 23, 2022), perma.cc/T6QG-4DSF;



8

*Job Creators Quest Grants* (archived Apr. 7, 2024), perma.cc/3JBW-93GR; *Founders First* (archived Apr. 7, 2024), perma.cc/WW6J-EGQ8.

### III. The Texas Job Creators Grant gives capital to companies in exchange for their time and sensitive business data.

30.   In the last few years, "more than 2,500 Texas businesses" have participated in Founders's Texas-based contest. *14 North Texas Businesses Land Founders First CDC Grant*. And the contest's popularity makes sense: The benefits are enormous. They come in three forms: cash, coaching, and community.

31.   Start with the cash. For its upcoming contest, Founders will award $50,000 to "10 diverse-led businesses in Texas." *Texas Job Creators Grant*. Each "grant package" will include "a cash award between $10,000 and $1,500." *Frequently Asked Questions*.

32.   Winners also get months of valuable mentorship. Besides the cash, Founders's finalists get "a scholarship to a Founders First accelerator program." *Texas Job Creators Grant*. Those "premier executive level" programs offer "a combination of structured training, coaching[,] and introductions to resources and partners." *Frequently Asked Questions*. Traditionally, Founders's accelerator programs cost $2,500 to $20,000 to attend—but not for the contest winners. *Id.* For them, "the cost of the accelerator is included as a 100% scholarship." *Id.*

33.   So winners can get up to $30,000 in prizes: $10,000 in cash and $20,000 in tuition. *Id.* And that figure doesn't include the "25% year over year [business] growth" that participants often see after finishing the program—growth that generates $25,000 to $750,000 in additional revenue on "average." *Our Accelerator Programs* (archived Apr. 7, 2024), perma.cc/GJN3-XWE2.

9

34. In exchange for the cash, classes, and coaching, Founders gets important consideration in return. To participate, applicants must satisfy three broad "conditions": they must give Founders their time and resources, license away their intellectual property, and spend their earnings in a way that Founders approves. *Frequently Asked Questions.*

35. To start, winners must participate in one of three months-long "accelerator program[s]." *Id.* Ranging from four to twelve weeks, these programs require winners to complete online training "modules," participate in "person[al] Pitch" events, and attend formal "reception[s]." *FastPath* (archived Apr. 7, 2024), perma.cc/R7NV-8NDC; *accord BootCamp* (archived Apr. 7, 2024), perma.cc/N8GK-SLLG; *Challenge* (archived Apr. 7, 2024), perma.cc/9RGL-577R. Those programs "are intensive" and generally require "30-50 hours of time to complete." *Founders First Job Creators Quest Grant* (archived Apr. 7, 2024), perma.cc/W59T-PPY2. Contestants must promise to "complete all Program assignments, assessments, success work[,] and participate in the pitch event." *Frequently Asked Questions.* So if an applicant doesn't sit for every lecture, complete every assignment, and participate in every pitch, she can't get the "award." *Id.*

36. Applicants also must agree to Founders's "terms and conditions." *Id.*; *accord Founders First Job Creators Quest Grant.* When applicants assent to those terms, they contract away four distinct rights. They must "grant" Founders "ownership" over all the intellectual property in their application, including "any recording or video, survey, written feedback, review, or recommendation." *Founders First Job Creators Quest Grant.* They must contract away their name, image, and likeness, giving "Founders First CDC and its affiliates … the irrevocable right to use, edit, and display [their] name, business name, product names, trademarks,

10

picture, photograph, likeness, voice, image, [and] recordings." *Id.* They must "release" Founders "from any and all liabilit[ies] and waive any and all claims and causes of action" that arise out of the contest. *Id.* And they must "agree to receive additional promotional information from Founders First." *Id.*

37. On top of contracting with Founders, applicants must contract with Bill.com—Founders's "payment disbursement system." *Frequently Asked Questions*. To "receive Grant disbursements," applicants must "set up an account with Bill.com," *id.*, which makes them agree to two more contracts: a list of "General Terms" and a "Privacy Notice." *Create your Bill Account* (archived Apr. 7, 2024), tinyurl.com/3zskzvrr.

38. Both of those contracts saddle contestants with even more obligations. When applicants agree to Bill's "General Terms," they bind themselves to a "mandatory arbitration" agreement, a "class action waiver," and a "choice of forum" clause, among other things. *General Terms of Service* (Jan. 22, 2024), perma.cc/6B6J-EF9G. And Bill's "Privacy Notice" makes applicants agree to even more terms, requiring them to give Bill their "Social Security Number," "financial information," and customer "data," which Bill can use when "marketing [its] products." *Privacy Notice* (Jan. 22, 2024), tinyurl.com/ye2x5fy9.

39. Applicants also must give Founders their sensitive business data. To participate in the program, applicants have to give Founders several proprietary business "document[s]." *Frequently Asked Questions*. Those documents include a "Profit and Loss" statement, an "organization[al] chart," and other "business financial information" like a "W-9" form. *Id.*

40. After an applicant has licensed away their intellectual property, sent Founders their financial documents, and promised to attend several classes, they must do one more thing: follow Founders's spending rules. To "receive the awarded amount," applicants must "use the Grant funds in a manner consistent with the[ir] grant application." *Frequently Asked Questions*. So if an applicant says that they want to use the funding for one project, but they later decide to use it for another, Founders has the right to take the "awarded amount" back or withhold the "funds" altogether. *Id.*

41. To participate in the program, eligible applicants must satisfy three broad conditions. First, they must own a for-profit "service based business" in Texas. *Frequently Asked Questions*; *accord Texas Job Creators Grant*. Second, their business must have two to twenty employees and make $100,000 to $3,000,000 a year. *Frequently Asked Questions*; *accord Texas Job Creators Grant*. And third, their business must be able to add at least one job that pays "an average $50K in yearly salary and benefits" in "the next 12 months." *Frequently Asked Questions*.

42. Contestants also must submit an application, which has three main components. *Frequently Asked Questions*. Applicants must first give Founders "an organizational chart," "financial document[s]," and "information on [the] intended use of [the] funds." *Id.* Then, applicants must submit a "headshot," an "Organization Chart," a "Profit/Loss Sheet," and a "1-3 minute video." *Texas Job Creators Grant*; *accord Frequently Asked Questions*. And finally, applicants must "[a]gree to participate in one of [Founders'] accelerator programs." *Frequently Asked Questions*.

## IV. The contest's racial exclusion injures the Alliance's members.

43. The Alliance has members who are being harmed by Founders's racially discriminatory program, including Member A.

44. Member A is a member of the Alliance. So is his business. Member A pays dues, believes in the Alliance's mission, and supports this lawsuit.

45. Member A sincerely wants to apply for and win the contest. Member A is pseudonymous because he does not want Founders to hold his involvement in this lawsuit against him when selecting contest winners. Member A also does not want to face reprisal from other businesses and the public for joining the Alliance or opposing race-based affirmative action.

46. Member A is ready and able to immediately apply to the upcoming contest cycle, but he can't because he doesn't "identify" as one of Founder's preferred groups. *Texas Job Creators Grant*. Member A is a straight white civilian man who does not live in one of the specified economic areas, so he can't apply. *Id.* But he could apply if he were "Latinx, Black, [or] Asian." *Id.*

47. Member A is able to apply because he otherwise satisfies all the contest's "eligibility requirements." *Frequently Asked Questions*. He owns a for-profit, service-based business that works largely with other businesses. His business can add at least two new employees—and pay them at least $50,000—in the next twelve months. And his business is in Texas, has two to twenty employees, and makes more than $100,000 but less than $3,000,000 a year.

48. Member A is also ready to apply as soon as possible after a court orders Founders to stop discriminating. Member A has already started assembling the necessary documents, which he will promptly submit once a court enjoins Founders from discriminating. He already has an organizational chart; a profit-and-loss sheet; a headshot; and a description of his company, who it serves, and how it was impacted by COVID. If he wins, Member A intends to invest the funds back into his business by increasing its marketing and outreach efforts. Member A will gladly participate in one of the accelerator programs.

49. What's more, companies like Member A's have repeatedly won the contest. Member A's business consults with other businesses and nonprofits, advising them on their most pressing legal, financial, and regulatory problems. His business is indistinguishable from many of Founders's recent winners. In 2023 alone, Founders gave its Texas grants to a wide array of organizations that work in compliance, consulting, finance, and law. *E.g.*, *Roads Consulting Group* (archived Apr. 7, 2024), perma.cc/SSU7-Q7YS ("Legal Support & Assistance"); *Welcome to Innova Learning, Inc.* (archived Apr. 7, 2024), perma.cc/4PTH-VZ43 ("regulatory and compliance" consulting); *Wealth Development Strategies LLC* (archived Apr. 7, 2024), perma.cc/U6S8-9EGE ("Estate Planning" and "Business Planning"). The Texas Job Creators Program funded similar businesses in 2022 and 2021, helping organizations that work in "strategic planning," "policy and procedure development," and "management consulting." *Accounting and CFO Services Tax Preparation* (archived Apr. 7, 2024), perma.cc/XHH9-R2R2 (cleaned up).

50. Founders's other programs have invested in the same type of companies. The "Chicagoland Job Creators Grant"—another one of Founders's contests—has repeatedly

invested in law firms, legal-services organizations, and consulting businesses. *Recipients of Expanded Chicago Job Creators Quest Grant* (Mar. 3, 2022), perma.cc/Q3VR-M88E ("NextLevel Law, P.C."); *Founders First CDC, Awards $100,000 to Illinois Businesses* (Apr. 5, 2023), perma.cc/DWY9-6CUL ("Justice Connect LLC," "KAE Consultants," and "Pearl Consulting Group"). Founders's "Pennsylvania/New Jersey Job Creators Grant" has followed the same trend, investing in consulting firms, accounting and legal-services organizations, and financial advisors. *See Pennsylvania/New Jersey Job Creators Quest Grant* at 1:02, 2:11, 2:26 (archived Apr. 16, 2024), perma.cc/9EUL-S5UY ("ELS Dynamic Consulting," "TriTech Services Group," and "Gordon Group Financial Services"). Same for Founders's "Vanguard Accelerator" contest, which has funded consulting and logistics companies, among other service-based businesses. *See Vanguard Accelerator Awards More than $400,000 to support Black, Indigenous, and Latina-Owned Businesses in the Twin Cities* (archived Apr. 12, 2024), perma.cc/S3KE-2WBZ ("Stanton Adams Consulting" and "Clutch Logistics").

## Violation of the Civil Rights Act of 1866
## 42 U.S.C. §1981

51. The Alliance repeats and realleges each of its prior allegations.

52. Founders is violating 42 U.S.C. §1981 by intentionally excluding certain applicants from contractual relationships because of their race.

53. Under §1981(a), "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts … as is enjoyed by white citizens." *Id.*

54. Section 1981 covers private parties like Founders. The Act applies to governmental and "nongovernmental" actors, §1981(c), "provid[ing] a cause of action for public or private discrimination based on race," *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir.

1986); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Section 1981 authorizes "both equitable and legal relief," including "damages." *Johnson*, 421 U.S. at 460.

55. Member A falls within §1981's ambit, whose "broad terms" bar discrimination "against, or in favor of any race." *McDonald*, 427 U.S. at 298. Titled "Equal rights under the law," §1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 139 S.Ct. 759, 768 (2019), by protecting the "equal right of all persons … to make and enforce contracts without respect to race," *Domino's*, 546 U.S. at 474 (cleaned up). As the Fifth Circuit has held, §1981 "forbids racial discrimination in the making and enforcement of private contracts … whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981).

56. Founders's contest is a contract under §1981. "The term contract, as used in §1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (cleaned up). Founders's contest fits that definition, offering contestants a shot at a prize in exchange for their time, intellectual property, and a promise to use the funds in a way that Founders likes. Contests like that are classic contracts. *E.g.*, *Hampton v. Dillard*, 247 F.3d 1091, 1104 (10th Cir. 2001). Especially when a contest places conditions on how the winners can use their earnings. *E.g.*, *Legal Servs. Corp. v. Client Centered Legal Servs. of Sw. Virginia, Inc.*, 217 F. Supp. 2d 706, 712-13 (W.D. Va. 2002), *aff'd*, 78 F. App'x 871 (4th Cir. 2003).

57. Founders's contest implicates a right that §1981 protects—the right to "*make* … contracts." 42 U.S.C. §1981(a) (emphasis added). "[A] contractual relationship

16

need not already exist" to trigger §1981. *Domino's*, 546 U.S. at 476. Section 1981 "protects the would-be contractor along with those who already have made contracts." *Id.* So businesses like Founders are liable "under §1981 when, for racially motivated reasons, they prevented individuals who 'sought to enter into contractual relationships' from doing so." *Id.* (quoting *Runyon v. McCrary*, 427 U.S. 160, 172 (1976)).

58. Founders is intentionally discriminating against Member A. "[P]roof of a facially discriminatory … policy"—or even "a corporate decision maker's express[ed] desire to avoid" contracting with members of a certain race—is "direct evidence of discriminatory intent." *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006) (cleaned up). Here there's both. The program "facially discriminat[es]" against certain white men. *Id.* And Founders's "corporate decision maker[s]" have expressed a "desire to avoid" contracting with white men. *Id.* The Alliance, therefore, "is not required to make any further allegations of discriminatory intent or animus." *Juarez v. Nw. Mut. Life Ins.*, 69 F. Supp. 3d 364, 370 (S.D.N.Y. 2014).

59. That Founders doesn't discriminate against *all* whites is not a defense. An employer cannot "discriminate against some employees on the basis of race," like white men, "merely because he favorably treats other members" of that race, like white women. *Connecticut v. Teal*, 457 U.S. 440, 455 (1982). "So long as the plaintiff's [race] was one but-for cause" of his exclusion, "that is enough." *Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1739 (2020); *accord Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S.Ct. 1009, 1019 (2020).

## PRAYER FOR RELIEF

60. The Alliance respectfully asks this Court to enter judgment in its favor and against Founders and to provide the following relief:

A. A declaratory judgment that Defendant's Texas Job Creators Program, as currently constituted, violates 42 U.S.C. §1981.

B. A temporary restraining order and preliminary injunction barring Defendants from closing the current application period, selecting grant recipients, or enforcing the Texas Job Creators Program's racial eligibility criteria.

C. A permanent injunction barring enforcement of Defendant's racial eligibility criteria.

D. Nominal damages of $1.

E. Reasonable costs and expenses of this action, including attorneys' fees, under 42 U.S.C. §1988 and any other applicable laws.

F. All other relief that the Alliance is entitled to.

Dated: April 16, 2024

Adam K. Mortara*
  (TN Bar No. 40089)
LAWFAIR LLC
40 Burton Hills Blvd., Ste. 200
Nashville, TN 37215
(773) 750-7154
mortara@lawfairllc.com

Respectfully submitted,

*/s/ Steven C. Begakis*
Thomas R. McCarthy*
  (VA Bar No. 47154)
Cameron T. Norris*
  (TN Bar No. 33467)
Steven C. Begakis**
  (ND Tex. No. 95172VA)
R. Gabriel Anderson*
  (TX Bar No. 24129302)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
cam@consovoymccarthy.com
steven@consovoymccarthy.com
gabe@consovoymccarthy.com

*pro hac vice forthcoming
**member of the Northern District of Texas who resides in Fort Worth

## VERIFICATION

I, Edward Blum, declare as follows:

1. I am the President of the American Alliance for Equal Rights, the plaintiff here.

2. I have reviewed this complaint.

3. For the allegations within my personal knowledge, I believe them all to be true.

4. For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents and based on my conversations with members of the American Alliance for Equal Rights, including Member A.

5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 16, 2024

_____
Edward Blum
President of American Alliance for Equal Rights