IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN ALLIANCE FOR
EQUAL RIGHTS,

*Plaintiff,*

v.                                                  No. 4:24-CV-00327-O

FOUNDERS FIRST COMMUNITY
DEVELOPMENT CORPORATION,

*Defendant.*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. FACTS .............................................................................................................. 2

III. LEGAL STANDARD ...................................................................................... 5

IV. ARGUMENT ................................................................................................... 5

      A.    Because Founders Does Not Discriminate, AAER Cannot Succeed On The Merits. ....................................................................... 5

            1.    AAER Does Not Have Standing. ................................................. 6

                  a.    AAER Has Not Identified A Member With Standing........ 6

                  b.    AAER Lacks Standing Because It Has Not Properly "Named" An Injured Member. ............................................. 9

                  c.    Member A Must Participate In This Litigation.............. 12

            2.    The Absence Of Any Liability Also Prevents AAER From Establishing A High Likelihood Of Success. ............................. 13

                  a.    Founders Has Never Considered Race In Awarding The Texas Grants.................................................... 14

      B.    AAER Cannot Show Irreparable Harm................................................ 17

      C.    The Balance of Equities And Public Interest Favor Denying AAER's Motion. ............................................................................... 18

V. CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*Abdallah v. Mesa Air Grp., Inc.,*
  83 F.4th 1006 (5th Cir. 2023) ................................................................... 14

*Allison v. Citgo Petroleum Corp.,*
  151 F.3d 402 (5th Cir. 1998) ..................................................................... 12

*Already, LLC v. Nike, Inc.,*
  568 U.S. 85 (2013) ...................................................................................... 7

*A.N. v. Landry*, 338 F.R.D. 347 (M.D. La. 2021). .................................................. 12

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ..................................................................... 6

*Benes v. City of Dallas,*
  2002 WL 318334 (N.D. Tex. Feb. 26, 2002) ............................................ 16

*Binh Hoa Le v. Exeter Fin. Corp.,*
  990 F.3d 410 (5th Cir. 2021) .............................................................. 10, 11

*Buchanan v. Consol. Stores Corp.,*
  217 F.R.D. 178 (D. Md. 2003) ................................................................... 15

*City of Erie v. Pap's A.M.,*
  529 U.S. 277 (2000) .................................................................................... 18

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
  589 U.S. 327 (2020) .................................................................................... 12

*Cornerstone Christian Schs. v. Univ. Interscholastic League,*
  563 F.3d 127 (5th Cir. 2009) ..................................................................... 13

*Craig v. Harney,*
  331 U.S. 367 (1947) .................................................................................... 10

*Di Montenegro v. Murphy,*
  2022 WL 17342620 (E.D. Tex. Nov. 29, 2022) ........................................ 10

*Do No Harm v. Pfizer Inc.,*
  96 F.4th 106 (2d Cir. 2024) ....................................................................... 10

*Doe v. Cong. of the U.S.*,
    891 F.3d 578 (6th Cir. 2018) ................................................................. 8

*Doe v. Mckesson*,
    945 F.3d 818 (5th Cir. 2019) ............................................................... 12

*Doe v. Pub. Citizen*,
    749 F.3d 246 (4th Cir. 2014) ............................................................... 11

*Doe v. Stegall*,
    653 F.2d 180 (5th Cir. 1981) ............................................................... 11

*Doe v. Trustees of Indiana Univ.*,
    2024 WL 1824967 (7th Cir. Apr. 26, 2024).................................... 10, 11

*Draper v. Healey*,
    827 F.3d 1 (1st Cir. 2016)..................................................................... 10

*Edrich v. Dallas Coll.*,
    2023 WL 8606816 (N.D. Tex. Dec. 12, 2023)...................................... 14

*Freedom From Religion Found., Inc. v. Abbott*,
    58 F.4th 824 (5th Cir. 2023)................................................................... 7

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*
    *v. Brock*, 477 U.S. 274 (1986) ..................................................... 6, 9, 12

*Interox Am. v. PPG Indus., Inc.*,
    736 F.2d 194 (5th Cir. 1984) ............................................................... 18

*June Med. Servs., L.L.C. v. Phillips*,
    22 F.4th 512 (5th Cir. 2022)................................................................. 10

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
    328 F.3d 192 (5th Cir. 2003) ................................................................. 5

*Miss. Rising Coal. v. City of Ocean Springs*,
    910 F.3d 191 (5th Cir. 2018) ................................................................. 8

*Moncada v. Peters*,
    579 F. Supp. 2d 46 (D.D.C. 2008) ....................................................... 15

*Moore v. Bryant*,
    853 F.3d 245 (5th Cir. 2017) ............................................................. 7, 8

*Ossman v. Meredith Corp.*,
    2022 WL 1134724 (N.D. Ga. Jan. 7, 2022) ......................................... 15

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
   45 F.4th 816 (5th Cir. 2022) ........................................................................ 8

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) ...................................................................... 10

*Ramsey v. Bd. of Regents of Univ. Sys. Of Georgia*,
   543 F. App'x 966 (11th Cir. 2013) ............................................................ 15

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................ 6, 8

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .................................................................................... 9

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................ 5

*Williams v. D'Argent Franchising, L.L.C.*,
   2023 WL 3059192 (W.D. La. Apr. 24, 2023) ........................................... 12

*Zimmerman v. City of Austin*,
   881 F.3d 378 (5th Cir. 2018) ...................................................................... 9

## Statutes

15 U.S.C. § 631(a) ........................................................................................ 18

42 U.S.C. § 1981(a) ...................................................................................... 14

## Other Authorities

Founders First CDC, *$100,000 Texas Job Creators Quest Business
   Grant*, https:// foundersfirstcdc.org/texas (last visited May 10, 2024) .............. 2, 5

Founders First CDC, *2023 Texas Job Creators Grant*,
   https://foundersfirstcdc.org/2023-texas-job-creators-grant (last
   visited May 10, 2024) ................................................................................ 18

Founders First CDC, *About Grants*, https://foundersfirstcdc.org/about-
   grants (last visited May 10, 2024) ......................................................... 5, 18

Founders First CDC, *About Us*, https://foundersfirstcdc.org/about-us
   (last visited May 10, 2024) ......................................................................... 2

Founders First CDC, *Business Education, Coaching and Mentorship*,
   https://foundersfirstcdc.org/programs (last visited May 14, 2024) ........................ 4

*Founders First CDC*, https://foundersfirstcdc.org/ (last visited May 10, 2024).................................................................................................................... 5

# I.  INTRODUCTION

This is a lawsuit in search of a controversy.  American Alliance for Equal Rights (AAER) alleges that Founders First Community Development Corporation (Founders) discriminates based on race.  The crux of its complaint is that when it comes to the Founders' Texas Job Creators Grant, "Latinx, Black, and Asian men can always apply, but white men often can't."  That is wrong.  White men can apply just as easily as "Latinx, Black, and Asian men" can.  Founders has ***never*** used race as a factor in determining who can apply for or receive a Texas Grant.  In fact, just last year, Michael Farmer, a white man who is not a veteran, does not identify as LGBTQIA+, and does not live in a low- or middle-income (LMI) area, applied for and won a Texas Grant.  What's more, dozens of other business owners with the same profile as Farmer—white men who do not check one of the other diverse categories— have applied for Texas Grants.  This grant program is race neutral, so this case does not raise any of the questions about how Section 1981 applies to charitable grants that are for the benefit of a particular racial group.  Because Founders does not consider, and has never considered, race as factor in determining eligibility for the Texas Grants, there is no controversy here, and AAER cannot show the substantial likelihood of success required for a preliminary injunction.

The falsity of this lawsuit's central premise—that Founders limits which white men can apply for a Texas Grant—dooms the case in three critical respects.  First, it means there is no standing.  Because AAER's anonymous "Member A" could have applied for a Texas Grant just like Mr. Farmer and other white, straight, nonveteran male applicants who do not live in LMI areas did, Member A has not suffered an

1

injury necessary to establish AAER's standing.  And the fact that Member A's race does not bar him from applying and would not be a factor in evaluating his application means that AAER's theory of Section 1981 liability falls apart.  And because Member A has suffered no harm—he can still apply for a Texas Grant—AAER can identify no harm, let alone the irreparable one required for an injunction to issue.

With neither injury nor a Section 1981 violation, AAER cannot prevail and is not entitled to a preliminary injunction.

## II.  FACTS

Founders is a nonprofit organization that provides entrepreneurship coaching and national and regional grants designed to accelerate small business growth.[1]  One of these regional grants is Founders' Texas Job Creators Grant.  The Texas Grant awards a total of $50,000 per annual grant cycle to ten Texas small businesses operating under a business-to-business or business-to-government model.[2]  Eligible businesses must have annual revenues between $100,000 and $5 million, two or more full-time employees, and the potential to add at least one full-time premium wage job in the next 12 months.[3]

Those requirements related to the business—which say nothing about the demographic profile of the owner—are the ***only*** eligibility criteria.  The grant program does not, and has never, used a business founder's race or other protected

---

[1]   Founders First CDC, *About Us*, https://foundersfirstcdc.org/about-us (last visited May 10, 2024).

[2]   Founders First CDC, *$100,000 Texas Job Creators Quest Business Grant*, https://foundersfirstcdc.org/texas (last visited May 10, 2024).

[3]   *Id.*

characteristic to limit eligibility.   App.4, 6 ¶¶ 12–13, 19.   Founders accepts and considers applications from ***all*** business owners who meet the above business model, profitability, and revenue and job growth potential criteria.   Indeed, since 2021, at least 25 white, straight, nonveteran men who do not live in LMI areas have applied for the grant.  App.7 ¶ 20.

The grant application, which opens for the forthcoming cycle in August 2024, does give business owners the option of providing their demographics—whether they are women, people of color, military veterans, members of the LGBTQI+ community, and/or residents of LMI areas—to assist Founders in tracking recipient demographics given historical disparities in access to small business funding.  App.6 ¶¶ 18–19.  But none of these demographic fields are required to be completed to submit an application.  App.6 ¶ 18.  The applications of those who decline to disclose their race or other listed characteristics are treated the same as any other.  *Id.*  Since 2021, over 1,400 business founders have applied for a Texas Grant without disclosing their race. App.7 ¶ 20.

After applications close for a grant cycle, Founders evaluates all applicants using eight merit-based criteria unrelated to race.[4]   These criteria prioritize profitability and interest in participating in Founders' entrepreneurship programming.   Four of these eight criteria relate to the business's founder: the founder's (1) track record as a learner; (2) suitability for Founder's accelerator program, which provides coaching on professional development and funding

---

[4] The 2024 grant application is scheduled to close in September 2024.

acquisition[5]; (3) demonstrated interest in and commitment to Founders' programs and mission; and (4) willingness to pitch in person as part of the accelerator program experience.   App.5 ¶ 15.   The other four criteria relate to the business: its (1) business-to-business potential; (2) recurring revenue potential; (3) revenue growth; and (4) team support for participation in the accelerator program.  *Id.*  These merit-based criteria are applied equally to all business owners, including white, straight, nonveteran males who do not live in LMI areas.  Indeed, one such individual, Mr. Farmer, applied for and *won* a Texas Grant for $2,500 in 2023.  App.7 ¶ 22; App.11 ¶ 10.  He did not understand anything on the Founders' website to prohibit him from applying for a Texas Grant based on his race, gender, sexual orientation, veteran status, or address.  App.11–12 ¶¶ 8, 11.

Even though Founders has never considered race in awarding Texas Grants, near the end of 2023 (well before the filing of this lawsuit), Founders realized that its website descriptions about who is eligible for the grants were not as clear as they could have been.  App.7 ¶ 23.  Founders undertook a review of the statements on its website in late 2023 and early 2024 and is removing mention of race or other protected characteristics in descriptions of the Texas Grant eligibility criteria. Founders is also amending some language on its website about Founders' general purpose and mission to emphasize that its grants are open to all small business

---

[5]   Founders First CDC, *Business Education, Coaching and Mentorship*, https://foundersfirstcdc.org/programs (last visited May 14, 2024).

4

owners.  *Id.*[6]  These changes to its website were not made in response to this lawsuit; Founders was planning to make them in any case, and it would have done so whether or not this suit was filed.  *Id.*

## III.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A preliminary injunction may not be entered unless AAER establishes that (1) it "is likely to succeed on the merits," (2) it "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [its] favor," and (4) "an injunction is in the public interest."  *Id.* at 20.  The Fifth Circuit has "cautioned repeatedly that a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."  *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (internal quotations omitted).

## IV.  ARGUMENT

### A.  Because Founders Does Not Discriminate, AAER Cannot Succeed On The Merits.

AAER's motion for a preliminary injunction should be denied because AAER cannot succeed on the merits of its claims.  It can show neither standing nor liability.

---

[6]  *See, e.g.*, *$100,000 Texas Job Creators Quest Business Grant*, *supra* n.2; Founders First CDC, *About Grants*, https://foundersfirstcdc.org/about-grants (last visited May 10, 2024); Founders First CDC, *Founders First CDC*, https://foundersfirstcdc.org/ (last visited May 10, 2024).

### 1.   AAER Does Not Have Standing.

To prevail in a federal lawsuit, a plaintiff must have Article III standing.  It follows that to obtain a preliminary injunction, a plaintiff must make a "clear showing" that it has standing.  AAER cannot make that showing because Member A was not injured and, in any event, an anonymous person cannot support associational standing.  *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

To establish associational standing, AAER must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Brock*, 477 U.S. 274, 282 (1986) (cleaned up).

### a.   *AAER Has Not Identified A Member With Standing.*

The first problem with AAER's attempt to establish standing through Member A is as fundamental as it gets: Member A would not have standing in his own right because he has not been injured.  *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).  AAER asserts that Member A "can't" apply for a Texas Grant because he is not "Latinx, Black, or Asian," *see* Dkt. 4 ("Mot.") at 12–13, but he could have and still can apply for a grant just as Mr. Farmer did.  App.7 ¶ 22; App.11–12 ¶¶ 8, 11.  Member A would not need to share his demographic information when submitting his application.  App.6 ¶ 18.  He could be like the over 1,400 business founders who have applied for the grant since 2021 without disclosing their race.  App.7 ¶ 20.  Had Member A applied, race would not have entered into Founders' evaluation of his

application. App.4–5 ¶¶ 13, 15–16. That testimony is undisputed and corroborated by Mr. Farmer's winning of a grant last year. App.11 ¶ 10.[7] Because Member A could have and still can apply for a Texas Grant just like other straight, nonveteran men who do not live in LMI areas, and Member A's race or other characteristics would be neither help nor hinder his application, he has not suffered any injury.

Nor could some language on Founders' website give rise to Article III injury even if AAER had made that allegation. Founders recognizes that its website could have more clearly conveyed that all are welcome to apply for the Texas Grants.[8] But AAER cannot manufacture Article III standing based the website's language, even if AAER or Member A were somehow offended. "[T]o plead stigmatic-injury standing, [a plaintiff] must plead that he was personally subjected to discriminatory treatment." *Moore v. Bryant*, 853 F.3d 245, 249 (5th Cir. 2017). Even if AAER believed Founders' website language was "painful, threatening, and offensive," that alone is not enough to establish Article III standing. That is why a plaintiff did not

---

[7]  To the extent that AAER challenges the factual statements in Founders' declarations, an evidentiary hearing on AAER's preliminary injunction motion should be held.

[8]  To the extent AAER claims that the website's language somehow injured Member A, such a claim will be moot. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case . . . [is] no longer a 'Case' or 'Controversy' for purposes of Article III . . . when the issues presented are no longer live." (internal quotations omitted)). Although "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," *see id.*, that did not happen here. Founders ***never*** discriminated based on race when awarding Texas Grants, and these website changes are only a clarification of its unchanged criteria. Because Founders' website changes will be "formal[]" and permanent, any "allegedly wrongful behavior could not reasonably be expected to recur." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023).

have standing to challenge Mississippi's then-inclusion of the Confederate battle flag in its state flag, s*ee id.* (affirming dismissal for lack of standing despite allegation that Confederate battle flag on the Mississippi state flag was "painful, threatening, and offensive"); and why atheists lacked standing to challenge the "In God We Trust" motto when they claimed the motto "stigmatiz[ed]" those who do not believe in God, *see Doe v. Cong. of the U.S.*, 891 F.3d 578, 594–95 (6th Cir. 2018).  Nor can AAER rely on an assertion that Founders' website "deter[red]" white business owners from applying, since there is still no evidence that AAER or its members were subjected to "discriminatory treatment." *See Miss. Rising Coal. v. City of Ocean Springs*, 910 F.3d 191, 193 (5th Cir. 2018) (affirming dismissal for lack of standing despite allegation "flying the state flag, which includes the Confederate battle flag in its canton . . . deters African-Americans from living in or moving to Ocean Springs").

Any claim of confusion about eligibility on the part of Member A is at odds with the understanding of Mr. Farmer and other white men who *did* apply for Texas Grants.  App. 11–12 ¶¶ 8, 11; App.7 ¶ 20.  In any event, "the state of confusion, absent more, is not a concrete injury under Article III."  *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 825 (5th Cir. 2022) (collecting cases); *see Spokeo*, 578 U.S. at 342 ("Not all inaccuracies cause harm or present any material risk of harm.").  And many other white, straight, nonveteran male business owners who do not live in LMI areas *understood* that they could apply regardless of the language on Founders' website and did so.  App.7 ¶ 20.  Nothing prevented Member A from applying for a Texas Grant, and "standing cannot be conferred by a self-inflicted injury."

*Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

On its own, the basic facts that Member A could have applied for a Texas Grant and race would not have influenced the success of his application defeats AAER's request for an injunction. Without a member who has suffered any injury from Founders' application process, AAER cannot establish standing.

> ### b.   *AAER Lacks Standing Because It Has Not Properly "Named" An Injured Member.*

Even if Member A somehow suffered an Article III injury, AAER cannot rely on Member A to establish standing because the lawsuit does not identify him.

As mentioned, the first requirement to establish associational standing is to show that the organization's members would have standing in their own right. *Brock*, 477 U.S. at 282. To do so, AAER must "'make specific allegations establishing that at least one *identified* member ha[s] suffered or [will] suffer harm.'" *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009) (emphasis added). "This requirement of *naming* the affected members" can only be dispensed with "where all the members of the organization are affected by the challenged activity." *Id.* at 498–99 (emphasis added). Critically, AAER concedes that the Texas Grant program has harmed only "some"—not all—of its members. Dkt. 5, Pl's App.2 ¶ 11. So AAER must "*name* the individuals who were harmed." *Summers*, 555 U.S. at 498 (emphasis added). AAER, however, has not named any of its members who were allegedly harmed by Founders' Texas Grant program, instead relying on only one declaration from anonymous "Member A." Dkt. 5, Pl's App.2 ¶ 12. That is not enough.

Courts routinely find that associational plaintiffs lack standing when they fail

to identify by name at least one member who has or will suffer harm. *See, e.g.*, *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 111 (2d Cir. 2024); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021); *Draper v. Healey*, 827 F.3d 1, 3–4 (1st Cir. 2016). For example, in *Do No Harm v. Pfizer Inc.*—another Section 1981 case filed by AAER's counsel—the plaintiff sought to establish standing based on anonymous declarations from its "members." *Do No Harm*, 96 F.4th at 111. Agreeing with the only other "sister circuit to squarely address the question," the Second Circuit stated that "an association must name its injured members to establish Article III standing." *Id.* at 117–18 (citing *Draper*, 827 F.3d at 3). Because the organization "would not disclose the names of Members A or B to the district court," the Second Circuit held that the district court had properly dismissed the complaint for lack of standing. *Id.* at 119.

The same result is warranted here. The public interest is not served by allowing AAER to base its standing on an anonymous member, because "[w]hat transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947). And because "American judicial proceedings are public," *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021), "[t]he norm in federal litigation is that all parties' names are public." *Doe v. Trustees of Indiana Univ.*, 2024 WL 1824967, at *3 (7th Cir. Apr. 26, 2024) (collecting cases). The Fifth Circuit, therefore, "does not usually allow parties to proceed anonymously based on generalized concerns." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 n.5 (5th Cir. 2022) (vacating sealing order in abortion litigation brought by doctors).

In considering a plaintiff's request for anonymity, courts consider (1) whether the plaintiff is "challeng[ing] governmental activity"; (2) whether the plaintiff will be required to disclose information "of the utmost intimacy"; and (3) whether the plaintiff will be "compelled to admit [his] intention to engage in illegal conduct, thereby risking criminal prosecution." *Doe v. Stegall*, 653 F.2d 180, 185–86 (5th Cir. 1981).

None of the *Stegall* factors support allowing Member A's anonymity. Member A is not challenging government conduct, his interest in participating in a grant program is far from intimate, and there is no suggestion that he is engaging in unlawful conduct. *See id.* Member A states that he "do[es] not want Founders First to hold [his] involvement" in this lawsuit "against" him or "face reprisal from other businesses and the public" for his involvement, Dkt. 5, Pl's App.7 ¶ 10,[9] but those business interests do not overcome the "presumption of openness" in American courts, *see Binh Hoa Le*, 990 F.3d at 417; *see also Trustees of Indiana Univ.*, 2024 WL 1824967, at *3 ("[A]sserted interest . . . in protecting [a party's] reputation" does not justify pseudonym request); *Doe v. Pub. Citizen*, 749 F.3d 246, 269 (4th Cir. 2014) (A "company's bare allegation of reputational harm" is not "a compelling interest sufficient to defeat the public's First Amendment right of access"). Federal courts

---

[9] In any event, Member A's "declaration" should be set aside because "the lack of a signatory for a declaration prevents any person or entity from being held to the statements within under penalty of perjury." *Williams v. D'Argent Franchising, L.L.C.*, 2023 WL 3059192, at *13 (W.D. La. Apr. 24, 2023) (concluding that because a party did not identify declarants those "anonymous unsworn statements will not be considered").

routinely adjudicate discrimination suits without concealing the plaintiffs' names, because a plaintiff should not be able "to shield himself from public knowledge of his acts when throwing a harsh light on identified defendants." *Trustees of Indiana Univ.*, 2024 WL 1824967, at *3 (concluding that a district court abused discretion in allowing a plaintiff to proceed as "John Doe" in bringing a discrimination claim).[10]

Even though Member A is not the plaintiff in this case, when someone accuses another of "violations of federal law," "[b]asic fairness dictates" that the person provide "his real name." *Di Montenegro v. Murphy*, 2022 WL 17342620, at *2 (E.D. Tex. Nov. 29, 2022). At most, "a narrow protective order governing the exchange of confidential information can address" Member A's concerns. *See, e.g.*, *A.N. v. Landry*, 338 F.R.D. 347, 354 (M.D. La. 2021).

Because AAER has failed to identify any member who has suffered harm from Founders' Texas Grant program, it will not be able to demonstrate standing were this case to proceed to the merits. Member A's anonymity thus is a separate reason why AAER cannot show a likelihood of establishing standing.

### c.   *Member A Must Participate In This Litigation.*

Associational standing requires a plaintiff to demonstrate that "neither the

---

[10] The assertion by AAER's President that he has "witnessed firsthand the retaliation that individuals can receive for bringing litigation challenging racial preferences," *see* Dkt. 5, Pl's App.2 ¶ 17, is not sufficient to overcome the presumption against anonymity because none of the incidents cited in the declaration involved Member A or relate to this lawsuit, *see Doe v. Mckesson*, 945 F.3d 818, 835 n.12 (5th Cir. 2019), *vacated on other grounds*, 529 U.S. 1 (2020) (approving of the district court's denial of an officer's request to proceed anonymously because "the incidents Officer Doe listed did not involve Officer Doe and were not related to this lawsuit").

claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Brock*, 477 U.S. at 282.  But AAER cannot show that this case can be litigated without the participation of Member A.  A Section 1981 plaintiff must prove that his race was the "but for" cause of his injury.  *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 329 (2020).  "The success" of discrimination claims "turn[s] ultimately on the special circumstances of each individual's case." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998). If AAER contends that Founders is discriminating based on race, adjudicating this case would require an "individualized" assessment of Member A's business, application materials, and compliance with Founders' rules, as compared to other business owners, to determine whether "but for" Member A's race, he could have participated in the Texas Job Creators Grant.  Because this must be an individualized evaluation, there is no associational standing here.  *See Cornerstone Christian Schs. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) (no associational standing where the participation of members was "essential to the resolution of" an "individualized element" of the claim).[11]

### 2.    The Absence Of Any Liability Also Prevents AAER From Establishing A High Likelihood Of Success.

AAER cannot succeed on its Section 1981 claim for the same reason that

---

[11]  This conclusion is true even though AAER seeks only declaratory and injunctive relief.   Under Fifth Circuit law, participation of underlying members is required unless "neither *the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit."  *Cornerstone Christian Schs.*, 563 F.3d at 134 n.5.  The fact that AAER "seeks only prospective relief says nothing about the claim asserted." *Id.*

Member A has no Article III injury for this Court to redress: Founders does not discriminate on the basis of race. No discrimination doesn't just mean no standing. It also means no liability.

### a. *Founders Has Never Considered Race In Awarding The Texas Grants.*

AAER cannot prevail on its Section 1981 claim because the Texas Grants are, and always have been, open to all. This just is not a case about how Section 1981 applies to charitable grants designed for the benefit of a particular racial group. Founders does not consider race—or any other protected characteristic—when accepting applications or evaluating them. Straight, nonveteran white men who do not live in LMI areas regularly apply for the Texas Grants, and just last year, one of these men, Mr. Farmer, was selected as a winner.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). To demonstrate disparate treatment to support a discrimination claim under Section 1981, a plaintiff must clear the substantial hurdle of producing evidence "show[ing] treatment of a person in a manner which *but-for* that person's protected characteristic would be different." *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1014 (5th Cir. 2023) (emphasis added) (cleaned up).

But this case doesn't require the Court to delve into the nuances of Section 1981 law. The absence of liability is plain and simple: Founders does not use race as a criteria or factor in its Texas Grants. Because Founders does not, and has never, considered race in awarding Texas Grants, App.4 ¶ 13, there is no Section 1981

violation. *See Edrich v. Dallas Coll.*, 2023 WL 8606816, at *14 (N.D. Tex. Dec. 12, 2023) (no disparate treatment where employer "did not consider the applicants' race, color, national origin, or age in [making its hiring] decisions" (cleaned up)). Like so many other applications people fill out, such as those for a driver's license or at the doctor's office or for the census, Founders does ask applicants to disclose some demographic data including race. But an applicant's decision to disclose their race or other demographic information is purely voluntary. Indeed, over 1,400 business founders have declined to disclose their race when applying for a Texas Grant, and their applications have been considered just like all the others. App.7 ¶ 20. If being non-white was truly a requirement for receiving a grant, Founders would not offer applicants this choice. App.6 ¶ 18. And if white men could only apply if they checked certain other demographic boxes, then Mr. Farmer would not have received $2,500 from Founders last year.[12]

---

[12] Even if Founders required applicants to disclose their demographic information (it does not), this still would not be enough to support a conclusion that Founders was engaging in discrimination. Indeed, courts have indicated that "the mere fact that [a contracting entity] collect[s] demographic information does not amount to evidence— direct or otherwise—of discrimination." *Ossman v. Meredith Corp.*, 2022 WL 1134724, at *13 (N.D. Ga. Jan. 7, 2022), *report and recommendation adopted as modified sub nom. Ossmann v. Meredith Corp.*, 2022 WL 970742 (N.D. Ga. Mar. 31, 2022), *aff'd*, 82 F.4th 1007 (11th Cir. 2023); *see also Ramsey v. Bd. of Regents of Univ. Sys. Of Georgia*, 543 F. App'x 966, 969 (11th Cir. 2013) (collection of "race data" for "legitimate reasons" not evidence of pretext or facial discrimination); *Moncada v. Peters*, 579 F. Supp. 2d 46, 55 & n.13 (D.D.C. 2008) (assertions of discrimination based solely upon employer collecting "information about applicants' race (and perhaps nationality and age) as part of the application process" were speculative and did not prove pretext because there are "obvious legitimate uses" for the information); *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 200 (D. Md. 2003) ("Mere collection and availability of racial demographic information, without more, does not support the inference of intentional discrimination or prove pretext."). What is more, the

Nor is there any discrimination when Founders reviews an application. Founders evaluates applications based on eight merit-based criteria that examine the business founder's demonstrated abilities and interest in Founders' accelerator program along with the growth and business-to-business potential of the business itself.   App.5 ¶ 15.   Each application is "scored" in these categories, and the individual's race has no impact on the business owner's score or ultimate chances at being awarded a grant.  *See Benes v. City of Dallas*, 2002 WL 318334, at *12 (N.D. Tex. Feb. 26, 2002), *aff'd,* 54 F. App'x 405 (5th Cir. 2002) (plaintiff's race, national origin, and age were irrelevant to lack of promotion where defendant applied a documented promotion eligibility matrix wherein "each candidate" was "scored . . . in several categories" and then ranked, and where "national origin, gender, race and age did not factor in [the p]laintiff's or any other candidate's evaluation").   A business founder's "national origin, gender, race," or other protected classification did not "factor" in Founders' prior Texas Grant decisions, nor will it factor in future contests. *Id.*

Member A was—and remains—free to apply for a Texas Grant, and his race would not be a factor in Founders' evaluation of his application.  Like other white, straight, male, nonveteran, and non-LMI-area business owners before him (including recent winner Mr. Farmer), Member A's application—should he choose to submit one—will be judged solely on its merit.  Member A will be evaluated on his proven

_____

Complaint here does not allege that the inclusion of voluntary questions about race alone violates Section 1981.

ability to learn and his interest in participating in Founders' accelerator program, and his business will be evaluated on financial metrics and growth potential. There is nothing to stop Member A from applying for, and winning, a grant. AAER, therefore, cannot show that Member A experienced disparate treatment and its Section 1981 claim will fail.

Without an even arguable case for liability, AAER comes nowhere close to showing a high likelihood of success on the merits.

**B.      AAER Cannot Show Irreparable Harm.**

Once again, the fact that Member A can apply for a Texas Grant and his application will not be evaluated based on race defeats a required element of injunctive relief. With no harm, there can be no irreparable harm.

In its motion, AAER spends much time on its argument that illegal race discrimination is irreparable, but that is immaterial. As discussed above, Founders does not engage in racial discrimination. It does not, and has never, used a business founder's race or other protected characteristic in awarding Texas Grants. Therefore, there is no risk of AAER or any of its members suffering any injury related to racial discrimination.

The same undisputed fact that the Texas Grants are open to all also defeats AAER's argument that the organization and its members will suffer irreparable harm in the form of "lost opportunities" because "Member A could forever lose his opportunity to compete for this cycle." Mot. at 19. This assertion is inaccurate because Member A can still fill out Founders' pre-application registration for a Texas Grant and, like Mr. Farmer, he could win a grant as race would not be a factor in the

17

selection process.  App.7 ¶ 22.  Here, there is nothing at stake:  because Founders already does not consider race in awarding grants, there is no relief for the Court to grant.

### C.   The Balance of Equities And Public Interest Favor Denying AAER's Motion.

At the risk of getting into broken-record territory, the absence of discrimination also prevents AAER from carrying its burden on the final two requirements for a preliminary injunction.  To start, the balance of the equities favors Founders.  AAER must clearly establish that its "threatened injury" "outweighs any potential harm" to Founders.  *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 198 (5th Cir. 1984).  But AAER fails to substantiate any injury.

A preliminary injunction also disserves the public interest because the Texas Grants "support[] small businesses"[13] and "create and promote premium wage jobs [in] small businesses" in this country.[14]  Congress has recognized the importance of "aid[ing], counsel[ing], assist[ing], and protect[ing] . . . the interests of small-business concerns."  *See* 15 U.S.C. § 631(a).  Founders' Texas Grant program advances these goals and an injunction halting the program would undermine the public interest.

### V.   CONCLUSION

Because Founders' Texas Grant program is open to all, this entire case collapses.  There is no injury to support standing, no discrimination to support liability, and no harm for an injunction to remedy.  All these doctrinal failings are

---

[13] *About Grants*, *supra* n.6.
[14] Founders First CDC, *2023 Texas Job Creators Grant*, https://foundersfirstcdc.org/2023-texas-job-creators-grant (last visited May 10, 2024).

another way of saying that AAER already has the relief it seeks: a Texas Grant program that does not consider race. That makes it "impossible for the court to grant any effectual relief whatever." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up). Effectual relief can be granted only when there is something at stake.

The Court should deny Plaintiff's motion for a preliminary injunction.

Dated: May 22, 2024                           Respectfully submitted,


                                              /s/ *Gregg J. Costa*
                                              Gregg J. Costa
                                                   (TX Bar No. 24028160)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              811 Main Street Suite 3000
                                              Houston, TX 77002-6117
                                              Telephone: 346.718.6649
                                              Fax: 346.718.6979
                                              Email: gcosta@gibsondunn.com

                                              Zakiyyah Salim-Williams (*pro hac* forthcoming)
                                              Zoë Klein (*pro hac* pending)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              1050 Connecticut Avenue, N.W.
                                              Washington, D.C. 20036-5306
                                              Telephone: 202.887.3740
                                              Fax: 202.467.0539
                                              Email: zswilliams@gibsondunn.com
                                                        zklein@gibsondunn.com

                                              Claire Piepenburg
                                                   (TX Bar No. 24097239)
                                              GIBSON, DUNN & CRUTCHER LLP
                                              2001 Ross Avenue Suite 2100
                                              Dallas, TX 75201-2923
                                              Telephone: 214.698.3175
                                              Fax: 314.571.2996
                                              Email: cpiepenburg@gibson.com

                                              Attorneys for Defendant

19

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 22nd day of May, 2024, I caused the foregoing Defendant Founders First Community Development Corporation's Opposition to Plaintiff's Motion for Preliminary Injunction to be filed with the Clerk of the Court via the CM/ECF system, which will send notification of such filings to the counsel of record in this matter who are registered on the CM/ECF system.

Dated: May 22, 2024

/s/ *Gregg J. Costa*
Gregg J. Costa
   (TX Bar No. 24028160)
GIBSON, DUNN & CRUTCHER LLP
811 Main Street Suite 3000
Houston, TX 77002-6117
Telephone:  346.718.6649
Fax:  346.718.6979
Email:  gcosta@gibsondunn.com