UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, § § § | |
| Plaintiff, § | |
| § | Civil Action No. 4:24-cv-00327-O |
| v. § § | |
| FOUNDERS FIRST COMMUNITY DEVELOPMENT CORPORATION, § § § § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Motion for a Preliminary Injunction (ECF No. 3), Brief in Support (ECF No. 4), and Appendix (ECF No. 5), filed April 16, 2024; Defendant's Response and Objection (ECF No. 21), filed May 22, 2024; and Plaintiff's Reply (ECF No. 42) and Appendix (ECF No. 43), filed June 26, 2024. The Court also heard oral argument at the in-person hearing conducted on July 26, 2024. (ECF No. 47). Having considered the briefing and applicable law, the Court **GRANTS** Plaintiff's Motion for Injunction (ECF No. 3).

I.  **BACKGROUND**[1]

Plaintiff American Alliance for Equal Rights ("the Alliance") sued Defendant Founders First Community Development Corporation ("Founders") pursuant to 42 U.S.C. §1981, and seeks declaratory relief, injunctive relief, and nominal damages.

Founders is a nonprofit organization that provides entrepreneurship coaching and national and regional grants designed to accelerate small business growth. One of the regional grants is

---

[1] Unless otherwise indicated, the recitation of background facts are taken from Plaintiff's Complaint (ECF No. 1), Plaintiff's Motion for Preliminary Injunction and Brief in Support (ECF Nos. 3, 4), and Plaintiff's Reply in Support of Motion for Preliminary Injunction (ECF No. 42).

1

Founders' Texas Job Creators Grant ("Texas Grant"). The Texas Grant awards a total of $50,000 per annual grant cycle to ten Texas small businesses operating under a business-to-business or business-to-government model.

Founders sets strict eligibility requirements for those who want to apply. To participate in the contest, applicants must identify as one of the following: Latinx, Black, Asian, Women, LGBTQIA+, a Military Veteran, or someone located in a low to moderate income area. Eligible applicants must also satisfy three broad conditions: (i) they must own a for-profit service-based business in Texas; (ii) their business must have two to twenty employees and make $100,000 to $3,000,000 a year; and (iii) their business must be able to add at least one job that pays an average of $50,000 in yearly salary and benefits in the next 12 months. Once those eligibility requirements are met, Founders evaluates the applications based on eight merit-based criteria to score the applicants before ultimately selecting the grant recipients.

The Alliance has members who they allege are being harmed by Founders' racially discriminatory program, including Member A. Member A and his business are members of the Alliance. Member A is ready and able to immediately apply during the upcoming grant cycle but is unable to because he does not identify as one of Founders' preferred groups. Member A is a straight white civilian male who does not live in one of the specified economic areas. Other than not meeting the contest's demographic requirements, Member A otherwise satisfies all the other eligibility requirements.

## II.     THRESHOLD ISSUE

As an initial matter, Defendant argues that Plaintiff does not have Article III standing because Member A was not injured and because an anonymous person cannot support associational standing.[2] The Court disagrees.

The associational standing doctrine permits a traditional membership organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To do so, the organization must satisfy the three-prong *Hunt* test by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Here, the Alliance satisfies the three-prong test. First, the Alliance seeks relief on behalf of Member A who has standing to sue. There is overwhelming evidence that Founders requires applicants to be "Latinx, Black, Asian, Women, LGBTQIA+, Military Veteran, or located in a low to Moderate Income area."[3] Thus, Member A has standing[4] because he is put "on unequal footing with other applicants based on race." *SFFA v. Univ. of Tex.*, 37 F.4th 1078, 1086 (5th Cir. 2022). Second, Founders does not challenge that this suit is germane to the Alliance's mission, so the second prong of associational standing is met.[5] Third, the Alliance's Section 1981 claim "[does]

---

[2] Def.'s Resp. at 6, ECF No. 21.
[3] Pl.'s Reply in Supp. of Mot. for Prelim. Inj. at 2, ECF No. 42.
[4] Defendant argues that a Section 1981 plaintiff must prove that his race was the "but for" cause of his injury. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 329 (2020). However, Plaintiff argues that their complaint is based on Member A's "inability to compete on equal footing." *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003). Because race plays a role in the Texas Grant program, the Court agrees that Member A is injured by being put on unequal footing.
[5] Pl.'s Reply in Supp. of Mot. for Prelim. Inj. at 2, ECF No. 42.

not require the participation of [its] individual members" because "the harm" is "their inability to compete on equal footing (and not their ultimate inability to obtain the grant)." *AAER v. Fearless Fund Mgmt.*, 2023 WL 6295121, at *4 (N.D. Ga. Sept. 27), *aff'd on standing*, 103 F.4th 765, 771-75 (11th Cir. 2024). Finally, the Court determines "[t]he Alliance's identification of its affected members by … pseudonyms … poses no bar to its standing." *AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 773 (11th Cir. 2024).[6]

## III.  LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy" and will only be granted if the movant carries its burden on all four requirements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits[.]" *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A plaintiff must demonstrate (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) that the injunction will not disserve the public interest. *Robinson v. Ardoin*, 86 F.4th 574, 587 (5th Cir. 2023); *Air Prods. & Chems., Inc. v. Gen. Servs. Admin.*, No. 2:23-CV-147-Z, 2023 WL 7272115, at *2 (N.D. Tex. Nov. 2, 2023). The movant must make a clear showing that the injunction is warranted, and the issuance of a preliminary injunction "is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985).

The Fifth Circuit held that "[t]he party seeking [injunctive] relief must satisfy a cumulative burden of proving each of the four elements enumerated before a … preliminary injunction can be granted." *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citing *Miss. Power & Light Co.*,

---

[6] Order Den. Mot. Compel, ECF No. 45.

760 F.2d at 621). That said, no factor has a "fixed quantitative value." *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023). On the contrary, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* In sum, "[t]he decision to grant or deny a preliminary injunction lies within the sound discretion of the trial court[.]" *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

IV. **ANALYSIS**

   **A. The Alliance is substantially likely to prevail on the merits by showing Founders violates Section 1981.**

Section 1981 guarantees "[a]ll persons … the same right … to make and enforce contracts," 42 U.S.C. § 1981(a), as such, it prohibits the "discrimination in the making or enforcement of contracts against, or in favor of, any race." *Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003). Section 1981 covers contracts between government, nongovernmental, and private parties, such as Founders, and "provid[es] a cause of action for public or private discrimination based on race." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 762 (5th Cir. 1986); *accord Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Section 1981 authorizes "both equitable and legal relief," including "damages." *Johnson*, 421 U.S. at 460.

At its core Section 1981 "guarantee[s] continuous equality between white and nonwhite citizens," *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 208 (2019). This is accomplished by protecting "the equal right of all persons … to make and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (cleaned up). As the Fifth Circuit has held, "Section 1981 … forbids racial discrimination in the making and enforcement of private contracts … whether the aggrieved party is black or white." *Bobo v. ITT, Cont'l Baking Co.*, 662 F.2d 340, 342 (5th Cir. 1981). Founders' eligibility requirements violate these principles because its program is a contract that discriminates against applicants, including Member A, based on race.

5

Founders' program is a contract[7] under Section 1981, a fact not disputed by Founders.[8] Founders has made clear that applicants must belong to preferred demographic groups to apply. In numerous instances, Founders has repeatedly insisted that applicants *must* belong to one of its preferred demographic groups. On its website, Founders has historically listed six "Eligibility Requirements" for the program, the first of which is the: "Founder identify as one of the following: Latinx, Black, Asian, Women, LGBTQIA+, Military Veteran, or located in a Low or Moderate Income area."[9]  This eligibility requirement is corroborated by a FAQ page for the program that asks, "Can any company apply for this program?"[10] In response Founders answers, "*No*, the company *must* be diverse-led; meaning founders that are people of color, women, LGBTQ community, military veterans or [someone] located in a low or moderate income area."[11] This eligibility requirement was further emphasized in press releases, quarterly reports, media interviews, and marketing materials.[12]

Despite this back drop, Founders argues that it "does not discriminate on the basis of race[,]" and thus, the contest does not treat races differently and therefore does not violate Section 1981.[13] In making this claim, Founders relies on a declaration from Founders' executive director,

---

[7] "The term contract, as used in Section 1981, refers to a right in the promisee against the promisor, with a correlative special duty in the promisor to the promisee of rendering the performance promised." *Adams v. McDougal*, 695 F.2d 104, 108 (5th Cir. 1983) (cleaned up). Founders' contest fits that definition. The program offers contestants a grant in exchange for their time, intellectual property, and a promise to use the funds in a manner acceptable to Founders.

[8] Def.'s Resp. at 15-16, ECF No. 21.

[9] Pl.'s App. at 9, ECF No. 5; Pl.'s Supp. App. at 11, ECF No. 43-1 (same in February 2024); *id.* at 13 (same in April 2024); *id.* at 15 (same in May 2024).

[10] Pl.'s App. at 122, ECF No. 5.

[11] *Id.* (emphases added). Though the company changed other parts of its FAQs page after the Alliance sued, it left this answer unchanged. *See* Pl.'s Supp. App. at 279, ECF No. 44-4.

[12] Pl.'s App. at 22, ECF No. 5; Pl.'s Supp. App. at 19, 28, 42, 59, 73, 89, 110, 140, 155, 418-21, ECF Nos. 43-44.

[13] Def.'s Resp. at 14, ECF No. 21.

Shaylon Scott, and a declaration from Michael Farmer, the sole white male with no additional demographic category to be awarded a Texas Grant.[14]

Countering the declarations of Ms. Scott and Mr. Farmer however is overwhelming evidence that Founders prefers applicants from its listed demographics as discussed above. Further, their claims are not supported by any policy, webpage, email, or other Founders document.[15] Worse still, the Texas Grant's application requires disclosure of race and demands demographic information.[16] The application elicits answers to a host of demographic questions, and requires a "headshot of the founder," as well as a "video[.]"[17] Though Founders argues that collecting race data is acceptable when it's done for "legitimate reasons," Founders fails to identify a legitimate reason for doing so *before* winners are selected.[18]

The Court finds that Founders' repeated and unequivocal statements that applicants *must* belong to one of its preferred demographic groups, far outweighs any probative value in Ms. Scott's singular post-lawsuit declaration that it does not, and Mr. Farmer's assessment of the program. This evidence demonstrates that, at best, Mr. Farmer's award is a fringe outlier that eluded Founders demographic eligibility requirements.

Nor does Founders' assertion that the webpage was unclear about race and that the program uses volunteers negate the evidence that it uses race in implementing the program.[19] First there is nothing unclear about the webpage. Founders emphatically proclaims applicants must be Latinx,

---

[14] Def.'s Resp. at Ex. A ¶ 13; Ex. B ¶ 11, ECF No. 21-1.
[15] Draft Tr. of July 26, 2024 Hr'g at 27-28 (Answering "I am not aware" to the Court's question "Is there any document or web page or email from your client that supports your client's affidavit that says they do not consider race?").
[16] Pl.'s Reply in Supp. of Mot. for Prelim. Inj. at 18, ECF No. 42; Draft Tr. of July 26, 2024 Hr'g at 59 (describing attempts to not fill out race and hit next and being unable to proceed with the application).
[17] Pl.'s Supp. App. at 216, 229-30, ECF No. 44.
[18] Def.'s Resp. at 15 n.12, ECF No. 21; Draft Tr. of July 26, 2024 Hr'g at 34-35 (describing what trends Founders is tracking by requiring applicants to disclose race).
[19] Scott Decl. ¶¶ 17, 23, ECF No. 21-1.

Black, Asian, or otherwise meet one of the specified demographic categories. Even when Founders altered the webpage in an attempt to provide more clarity, it retained statements affirming applicants must be people of color, women, members of the LGBTQ community, military veterans or someone within a low or moderate income area.[20]

Finally, that Founders utilizes volunteer judges to evaluate the applications does not demonstrate race is not utilized because those judges are trained by Founders' executive director, the same person who has emphasized that the applicants must meet one of the preferred categories.[21] For the reasons stated above, the Court holds at this stage that Plaintiff is likely to succeed on the merits, and thus, has carried part of its burden for a preliminary injunction.

### B. The Alliance will suffer irreparable harm without injunctive relief.

The Alliance has identified three irreparable harms: racial discrimination, lost opportunity to apply, and potential mootness.[22] The Court agrees that Founders' discrimination is irreparably harming the Alliance and its members, including Member A, by subjecting them to "a discriminatory classification" that prevents Member A and other members "from competing on an equal footing." *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200, 211 (1995) (cleaned up); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Courts, including this one, have long held that "race and sex discrimination" are "irreparable" harms. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 651(N.D. Tex. 2021) (O'Connor, J.); *accord Nuziard v. Minority Bus. Dev. Agency*, 2024 WL 965299, at *45 (N.D. Tex. Mar. 5 2024) (Pittman, J.). In response, Founders renews its assertion that the Texas Grant program does not consider race

---

[20] Pl.'s Supp. App. at 279, ECF No. 44; Draft Tr. of July 26, 2024 Hr'g at 73 (Founders asserting that the webpage has been revised recently). That evidence is not before the Court at this stage.
[21] Scott Decl. ¶ 17, ECF No. 21-1
[22] Pl.'s Br. in Supp. of Mot. for Prelim. Inj. at 18, ECF No. 4.

and argues that the Alliance's argument for irreparable harm is therefore immaterial.[23] Again, the Court is not persuaded.[24] The overwhelming evidence shows that in the absence of the Court's intervening relief, the Plaintiff is substantially threatened with irreparable harm.

### C. The remaining factors favor the Alliance.

Finally, the balance of equities and public interest favors the Alliance. Absent injunctive relief, Member A risks forever losing his chance to compete in an application process that is race neutral—a right that the Supreme Court has described as "foundational," "fundamental," "transcendent," and "universal." *Harvard*, 600 U.S. at 201-06. While Founders contends that a preliminary injunction disserves the public interest because Texas Grants support small businesses,[25] the Court does not see how the public is served by a program with racially discriminatory practices.

## V. CONCLUSION

Having considered the arguments, evidence, and applicable law, the Court concludes that the Plaintiff has met their burden of proving each of the four elements for preliminary injunctive relief. *See* Fed. R. Civ. P. 65(d). For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction (ECF No. 3) and **ENJOINS** Defendant from closing the current application period for the Texas Job Creators Program, selecting grant recipients, or enforcing the contest's racial eligibility requirements until further Order from this Court or the Fifth Circuit Court of Appeals.

**SO ORDERED** on this **31st** day of **July, 2024**.

Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[23] Def.'s Resp. at 17, ECF No. 21.
[24] Lost opportunity and mootness also justify irreparable harm.
[25] Def.'s Resp. at 18, ECF No. 21.